IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LEILA MCCOY,<br><br>        Plaintiff,<br><br>vs.<br><br>COLORADO DEPARTMENT OF HUMAN SERVICES, EL PASO COUNTY DEPT OF HUMAN SERVICES, CHRISTOPHER GARVIN, MAGDELINE BRANCH, and SHERYL SABLAN,<br><br>        Defendants. | 8:18CV483<br><br><br>MEMORANDUM<br>AND ORDER |

Plaintiff filed her Complaint on October 4, 2018. (Filing No. 1.) She has been given leave to proceed in forma pauperis. (Filing No. 5.) The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Plaintiff's Complaint (filing no. 1) alleges she was a "victim of serious violence including domestic violence causing permanent injury and disability" and "was relocated [with her children] through the battered women's network to Colorado Springs for [her] safety and assistance during [a] high risk pregnancy." (*Id*. at CM/ECF p. 6.)[1] Plaintiff alleges she is blind, disabled, and suffers from chronic health conditions and that at least one of her children is also disabled. (*Id*. at CM/ECF pp. 4, 7.) Because she had to flee with her children from a dangerous situation, Plaintiff alleges she qualified under "the rules for SNAP/TANF/Medicaid pertaining to domestic/sexual violence" for "extended

---

[1] Spelling, punctuation, and capitalization corrected throughout this order.

assistance with benefit eligibility, redetermination, and case maintenance because my physical disabilities/mental disabilities/chronic health conditions and safety issues prevented me from doing a lot of paperwork without assistance." (*Id.* at CM/ECF p. 6.)

Plaintiff alleges Defendants—the Colorado Department of Human Services ("Colorado DHS"), El Paso County Department of Human Services ("El Paso County DHS"), and three El Paso County DHS personnel—refused Plaintiff's request for "reasonable accommodation and assistance with all paperwork including help completing and proofreading all paperwork by phone in 2010" and retaliated against her because she filed an ADA complaint. (*Id.*) Plaintiff alleges "[t]he department . . . had [Plaintiff] arrested for errors and omission on [her] forms made by [her] home health aide whom they knew was also on SSI for chronic health and learning disabilities" and lacked training to complete the paperwork correctly. (*Id.*) As a result of this arrest, Plaintiff alleges she was "held without [her] life-sustaining medication, deprived . . . of 24[-hour] prescribed in-home health care and without pain management and diet necessary to prevent serious harm and death, [and] denied [her] access to health-related services until hospitalization." (*Id.* at CM/ECF p. 4.)

Plaintiff further alleges the Defendants:

- denied her access to Medicaid Waiver and Home Care allowance programs for the disabled and also respite child care, use of her SSI for basic needs, and a deduction on her food stamps calculation for aid or other medical expenses;

- refused to allow Plaintiff access to Vocational Rehabilitation for the Blind and failed to provide Plaintiff with adaptive medical equipment or adaptive computer equipment and training;

2

- denied Plaintiff "due process and reasonable accommodation in SNAP/TANF/Medicaid Waiver/Home Care Allowance and Vocational Rehabilitation eligibility, recertification and case maintenance" "for almost 5 years";

- "removed [her] children and still failed to put services in place before returning them and did not pay underpayments associated with denial of my benefits and miscalculation of my benefits"; and

- deprived her of "excess utility allowance deductions when [she] was eligible for them due to disability."

(*Id*. at CM/ECF pp. 6–7.)

As a result of Defendants' actions, Plaintiff alleges she "suffered 4 miscarriages due to the stress," "almost died of diabetic complications . . . because [she] . . . was deprived of assistance paying for the health care," suffered "injuries to [her] shoulder and back from being dragged around and forced to 'feel' for my care during the arrest," and "lost a considerable amount of vision due to diabetic complications and had digestive, kidney and other serious complications from being deprived of food, medication, and services that would have allowed [her] to control [her] chronic health condition and pain." (*Id*. at CM/ECF p. 7.) In addition, Plaintiff claims Defendants placed her on "the child abuse registry under false allegations and a case that the district attorney requested be dismissed that is sealed by the court [which] prevents [Plaintiff] from working in [her] field of social work. (*Id*.)

Plaintiff further alleges Defendants "gave false information to the housing authority so the PHA would illegally terminate [her] voucher" and "filed for a false protective order claiming they were scared for their safety" even though they knew Plaintiff posed no threat to them due to her physical limitations. (*Id*.) Consequently, Plaintiff was "denied assisted housing" and "denied entry into

family shelters and other programs which consider persons with protective orders a danger" leaving Plaintiff and her children homeless "with all [Plaintiff's] health complications and disabilities where [she] was forced to give birth in a public toilet and [her] baby drowned while [she] was waiting for medical help." (*Id*.)

Plaintiff purports to bring this suit under the Americans With Disabilities Act, 42 U.S.C. § 12131, *et seq*., the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*., 42 U.S.C. § 1983, and "USDA Regulations for Disabled Patrons Receiving SNAP." (Filing No. 1-1, Civil Cover Sheet.) For relief, Plaintiff seeks injunctive and declaratory relief including removal from the child abuse registry and proper calculation and payment of "SNAP/TANF/HCA and Medicaid waiver" benefits as well as $1.5 million in damages. (Filing No. 1 at CM/ECF p. 8 & Civil Cover Sheet.)

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or

grounds for a claim, and a general indication of the type of litigation involved.'"
*Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION

Plaintiff's Complaint (Filing No. 1) names as Defendants the Colorado DHS, the El Paso County DHS, and three individuals who apparently work for the El Paso County DHS in Colorado Springs, Colorado—Christopher Garvin, Magdeline Branch, and Sheryl Sablan—and describes events that apparently occurred in Colorado. This raises the question whether this court can exercise personal jurisdiction over these nonresident defendants.

A two-step analysis is used to determine whether a court can properly exercise personal jurisdiction over a defendant. *Northrup King v. Compania Productora Semillas Algodoneras Selectas*, 51 F.3d 1383, 1387 (8th Cir. 1995). First, the court must consider whether personal jurisdiction can properly be exercised under the state law of the forum state; more specifically, whether jurisdiction exists under the state's "long-arm statute." *Id*. "Second, the court's exercise of jurisdiction must be consistent with the due process clause of the Fourteenth Amendment." *Id*. Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536, has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution. *Ameritas Inv. Corp. v. McKinney*, 694 N.W.2d 191, 199 (Neb. 2005). Thus, the court need only analyze whether the court may exercise personal jurisdiction over the named Defendants without violating the protections afforded by the Due Process Clause.

"Due process allows a court to exercise personal jurisdiction over a non-resident defendant only if doing so is consistent with traditional notions of fair play and substantial justice." *Northrup King*, 51 F.3d at 1387 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The plaintiff must demonstrate that the non-resident defendant has had sufficient contacts with the forum state such that the defendant "'should reasonably anticipate being haled into court there.'" *Id*. (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980)).

Plaintiff's Complaint (Filing No. 1) lacks any allegations suggesting that any of the Defendants have any contact or connection to the State of Nebraska. Plaintiff does not describe anything the Defendants have done in the State of Nebraska that should have caused them to anticipate being sued here. Accordingly, there is no proper basis apparent from the face of the Complaint for exercising personal jurisdiction over Defendants, and this action should be dismissed for that reason. *See Sanders v. United States*, 760 F.2d 869, 872 (8th Cir. 1985) (when an IFP applicant's complaint does not include any allegations supporting personal jurisdiction, the court may properly conclude, *sua sponte*, that the action should be summarily dismissed); *Banks v. New York Police Dep't*, No. 4:15CV3012, 2015 WL 1470475, at *2 (D. Neb. Mar. 31, 2015) (on initial review of pro se case, "the Court finds that there is no proper basis apparent from the face of the complaint for exercising personal jurisdiction over any of these defendants in the District of Nebraska, and this action should be dismissed as to them for that reason"); *Master v. Epps*, No. 1:14-CV-129, 2014 WL 6626439, at *1 (D.N.D. Nov. 21, 2014) ("courts in the Eighth, Ninth and Tenth Circuits have recognized that complaints may be dismissed on initial review when there is an obvious lack of personal jurisdiction") (collecting cases).

IT IS THEREFORE ORDERED that this matter is dismissed without prejudice. The court will enter judgment by a separate document.

Dated this 13th day of June, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge